**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**


GULFPORT ENERGY CORPORATION,

                Plaintiff,

     vs.                                   Civil Action 2:15-cv-780
                                                   Judge Watson
                                                   Magistrate Judge King

VILLAGE OF BARNESVILLE, OHIO,

                Defendant.


<u>**OPINION AND ORDER**</u>

**I.    Background**

The *Complaint*, ECF 1, alleges that, on August 17, 2012, plaintiff Gulfport Energy Corporation ("plaintiff" or "Gulfport") and defendant Village of Barnesville, Ohio, "executed the Gulfport Water Agreement in which Barnesville granted to Gulfport the unrestricted right to draw water from the Slope Creek Reservoir (the 'Reservoir') unless and until the health and safety of area residents and businesses are impaired." *Complaint*, ¶ 6.  On September 10, 2012, the Village of Barnesville executed an oil and gas lease (the "Mineral Rights Agreement") with Antero Resources Corporation ("Antero"), "in which Barnesville granted Antero the exclusive right to drill, explore, conduct seismic prospect, operate, produce, remove, and market oil, gas, hydrocarbons, and their constituents and by-products under subsurface rights belonging to Barnesville in Somerset and Warren Townships."  *Id.* at ¶ 8.

On May 1, 2013, the Village of Barnesville and Antero entered into a water use agreement that granted Antero "the non-exclusive right to withdraw water from the Barnesville Slope Creek #3." ECF 9-1. In January 2014, the Village of Barnesville and Antero entered into a water lease that revoked the May 2013 agreement. The January 2014 agreement granted Antero "the right to withdraw water from said Reservoir, at a withdrawal rate up to a maximum of 1.5 million gallons per day (MGPD), to be averaged over a 30-day period," subject to withdrawal limitations upon water levels at the Reservoir falling below a specified level. ECF 9-2. The agreement also provides that Antero "may allow [the Village of Barnesville] the ability to market . . . excess water for sale to third parties." *Id*. at p. 1. However, "[i]n no event . . . shall [the Village of Barnesville's] sale of water to third parties, during those times as determined by Grantee, result in any ramifications by Grantee." *Id*. at pp. 1-2.

On June 30, 2014, "Antero assigned to Gulfport its rights to develop minerals under the Mineral Rights Agreement." *Complaint*, ¶ 10. The Village of Barnesville has allegedly refused to provide Gulfport with water in violation of Gulfport's water rights. *Id*. Gulfport requested that the Village of Barnesville provide adequate assurance of performance under the Gulfport Water Agreement, and, on February 20, 2015, Barnesville allegedly refused to provide adequate assurance and disputed whether Gulfport has superior rights to the water in the Reservoir. *Id*. at ¶ 14. Gulfport filed this action on March 5, 2015, seeking the following relief:

2

(A) A declaration that the Gulfport Water Agreement takes priority over, and precedes, any other agreement that Barnesville has entered into with a third-party for the extraction of the same water.

(B) A declaration that Gulfport may draw water from the Reservoir unless and until Barnesville finds it necessary to restrict Gulfport's water use based upon a concern for the health and safety of area residents and businesses.

(C) Temporary, preliminary, and permanent injunctive relief enjoining Barnesville from interfering with Gulfport's exercise of its water rights under the Gulfport Water Agreement.

(D) Temporary, preliminary, and permanent injunctive relief enjoining Barnesville from granting or otherwise recognizing priority rights in a third-party over Gulfport concerning water rights in the Reservoir.

(E) Such other and further relief as allowed by law or in equity that the Court deems appropriate and to which Gulfport is entitled, including, without limitation, reasonable attorneys' fees and the costs of this action.

*Id.* at p. 7.

This matter is now before the Court on Antero's *Non-Party Motion to Intervene as Defendant and Memorandum in Support* ("*Motion to Intervene*"), ECF 9. Antero seeks to intervene in this matter pursuant to Federal Rules of Civil Procedure 24(a) and 24(b) "in order to protect its direct and substantial interests relating to water usage from [the Reservoir]." *Id.* at p. 1. The Village of Barnesville does not oppose Antero's *Motion to Intervene*; Barnesville argues that resolution of plaintiff's claim "will necessarily require a comparison of the relative water rights of the others, including Antero." ECF 13. Plaintiff opposes Antero's *Motion to Intervene* on the basis that "this lawsuit . . . is restricted to a determination of Gulfport's

3

rights under the Gulfport Water Agreement." *Brief in Opposition of Gulfport Energy Corp. to Non-Party Antero Resources Corporation's Motion to Intervene* ("*Gulfport's Response*"), ECF 14.  With the filing of *Antero's Reply*, ECF 15, this matter is now ripe for consideration.

## II.  Standard

Rule 24(a) of the Federal Rules of Civil Procedure governs intervention of right, providing in pertinent part:

> On timely motion, the court must permit anyone to intervene who:
>
> . . .
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).  The United States Court of Appeals for the Sixth Circuit requires that intervention as of right satisfy four factors:

> (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest.

*Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007) (citing *Grutter v. Bollinger*, 188 F.3d 394, 397-98 (6th Cir. 1999)).  "'The proposed intervenor must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied.'"  *United States v. Michigan*, 424

4

F.3d 438, 443 (6th Cir. 2005) (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)).

Rule 24(b) governs permissive intervention, providing in pertinent part: "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).  The decision to permit intervention under Rule 24(b) falls within the sound discretion of the trial court. *Coalition to Defend Affirmative Action*, 501 F.3d at 784 (citations omitted); *United States v. Michigan*, 424 F.3d at 445.  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Regardless of whether a party seeks to intervene under Rule 24(a) or Rule 24(b), the motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). A motion to intervene must also be timely. *Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011).

## III. Discussion

Antero first seeks to intervene as a matter of right under Rule 24(a).  As discussed *supra*, Antero must satisfy four factors to intervene as a matter of right.  The first factor requires that the motion to intervene be timely. *Coalition to Defend Affirmative Action*, 501 F.3d at 779.  Timeliness is a "threshold issue;" a court

5

must deny an untimely motion to intervene. *United States v. City of Detroit*, 712 F.3d 925, 930 (6th Cir. 2013) (quoting *Grubbs*, 870 F.2d at 345-46); *Blount-Hill*, 636 F.3d at 284 (citations omitted); *Stotts v. Memphis Fire Dept.*, 679 F.2d 579, 582 (6th Cir. 1982) (citing *NAACP v. New York*, 413 U.S. 345, 365 (1973)). Courts consider five factors in determining the timeliness of a motion to intervene:

> "1) the point to which the suit has progressed; 2) the purpose for which intervention is sought; 3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; 4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and 5) the existence of unusual circumstances militating against or in favor of intervention."

*Blount-Hill*, 636 F.3d at 284 (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)). "No one factor is dispositive, but rather the 'determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances.'" *Id.* (quoting *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472-73 (6th Cir. 2000)).

Antero timely sought leave to intervene in this action. Plaintiff filed this action on March 5, 2015, and Antero moved to intervene on May 18, 2015. Antero represents that it "immediately took steps to prepare and file" its *Motion to Intervene* "[a]s soon as Antero became aware of the action." *Motion to Intervene*, *PAGEID* 48. Moreover, at the request of the parties, the Village of Barnesville was granted until July 6, 2015, to respond to the *Complaint*, and the

6

preliminary pretrial conference originally scheduled for July 2, 2015, was continued to August 5, 2015. *Order*, ECF 12. The parties and Antero have been "actively involved in settlement discussions," and the parties consulted with Antero before filing their joint motion for an extension of time to respond to the *Complaint* and to continue the preliminary pretrial conference. *See* ECF 11, p. 3 ("The parties, and Antero, are in accord that the 31-day extension will aid settlement and this Motion is unopposed. . . . Non-party Antero agrees to the continuance of the preliminary pretrial conference."). Under these circumstances, the Court concludes that Antero's motion to intervene was timely.

The second factor requires that Antero have a "substantial legal interest in the subject matter of the case." *Jansen*, 904 F.2d at 341. This Circuit "subscribe[s] to a 'rather expansive notion of the interest sufficient to invoke intervention of right.'" *Grutter*, 188 F.3d at 398 (quoting *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)). An applicant for intervention has a "substantial legal interest in the subject matter of the case" if it has "'a direct and substantial interest in the litigation,'" *Reliastar Life Ins. Co. v. MKP Invs.*, 565 F. App'x 369, 371-72 (6th Cir. 2014) (quoting *Grubbs,* 870 F.2d at 346), "such that it is a 'real party in interest in the transaction which is the subject of the proceeding.'" *Id.* (quoting *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 317 (6th Cir. 2005)).

7

Antero argues that it has a substantial legal interest in this case because "the interests Plaintiff seeks to protect in this litigation directly implicate Antero's rights and interests under its own water lease with Barnesville." *Motion to Intervene*, *PAGEID* 48. Antero argues that granting plaintiff the relief sought will cause Antero to lose "the priority and rights it has under its own valid and continuing water lease." *Id.* at *PAGEID* 48-49.

Gulfport argues that it "is seeking declaratory judgment on a contract between only it and Barnesville" and that the "source of Antero's rights under its separate contract is not at issue here." *Plaintiff's Response*, p. 6. Gulfport argues that Antero has an "indirect interest" or a "contingent economic interest" in this matter and that any dispute between Antero and the Village of Barnesville regarding Antero's rights under the January 2014 water lease is unrelated to this case. *Id.* at pp. 8-9. Gulfport further argues that, because the Gulfport Water Agreement predates Antero's water lease and Antero was not a party to the Gulfport Water Agreement, Antero "is completely unnecessary to determine Gulfport's rights in this lawsuit" and "only would be indirectly affected by the outcome of the litigation." *Id.* at pp. 7-9.

In its reply, Antero argues that its interest is not indirect or contingent because it "has exercised and continues to exercise its priority to draw water from the reservoir pursuant to its water lease with Barnesville." *Antero's Reply*, p. 5. Antero also argues that "Gulfport is not merely asking this Court to determine whether

8

Gulfport — in vacuum — can purchase water from the reservoir at issue." *Id*. at p. 3. Rather, "Gulfport is asking for [] a finding of a right as against all third parties and a specific finding (and injunction to that effect) that its right to purchase water has *priority* over the rights that Antero has negotiated in its water lease." *Id*. (emphasis in original). According to Antero, this Court will be required to weigh the rights of each water user in order to determine who has the superior rights. *Id*. at pp. 3-6.

Gulfport seeks a declaration that the Gulfport Water Agreement takes priority over "any other agreement that Barnesville has entered into with a third-party for the extraction of" water in the Reservoir. *Complaint*, p. 7. The *Complaint* specifically references Antero's January 2014 water agreement with the Village of Barnesville and attaches the oil and gas lease between Antero and the Village of Barnesville. Gulfport nevertheless argues that Antero lacks a substantial legal interest in this case because the source of Antero's interest is not derived from the Gulfport Water Agreement. *See Plaintiff's Response*, p. 6. The Court agrees that the source of Antero's interest does not derive from the Gulfport Water Agreement. *Cf. Energy Coal Res., Inc. v. Paonia Res. LLC*, No. 08-cv-117, 2008 WL 5397179, at *3 (E.D. Ky. Dec. 24, 2008) ("First, Black Diamond's asserted interest in this action is indirect. Indeed, the source of its interest does not derive from the Option Agreement which forms the basis of this action, but rather an entirely different instrument-the Crested Butte operating agreement."). However, Gulfport seeks a

9

declaration that its water lease has priority over Antero's water
lease. A determination of priority among water leases will require
consideration of both the Gulfport Water Lease, which does not address
priority, and Antero's water lease, which apparently grants Antero
priority water rights. Moreover, Antero's interest is not a
contingent interest, *see Antero's Reply*, p. 5 (representing that
Antero "has exercised and continues to exercise its priority to draw
water from the reservoir pursuant to its water lease with
Barnesville"), and, contrary to Gulfport's arguments, the outcome of
this litigation will not merely "indirectly affect[]" Antero.
Gulfport seeks a declaration that the Gulfport Water Agreement has
priority over Antero's water lease, and it seeks an injunction
prohibiting the Village of Barnesville from interfering with
Gulfport's priority water rights. The claims asserted and the
remedies sought by Gulfport simply cannot be resolved by interpreting
only the Gulfport Water Lease. *Cf. MasterCard Int'l Inc. v. Visa Int'l
Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006) (denying
intervention where the plaintiff could obtain complete relief from the
defendant without regard to the defendant's contract with the party
seeking intervention). Rather, in order to determine priority, the
Court must also consider Antero's water lease. Under these
circumstances, the Court concludes that Antero has a substantial legal
interest in the subject matter of this case.

The third factor requires that Antero show that its "ability to
protect [its] interest may be impaired in the absence of

10

intervention." *Coalition to Defend Affirmative Action*, 501 F.3d at 779. This factor requires "'a would-be intervenor [to] show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal.'" *Grutter*, 188 F.3d at 399 (quoting *Miller*, 103 F.3d at 1247). Here, Gulfport seeks a declaration that its water lease has priority over Antero's water lease. Gulfport also seeks an injunction to prevent the Village of Barnesville "from interfering with Gulfport's exercise of its water rights under the Gulfport Water Agreement" and preventing Barnesville from "recognizing priority rights in a third-party over Gulfport concerning water rights in the Reservoir." *Complaint*, p. 7. Antero represents that it "has exercised and continues to exercise its priority to draw water from the reservoir pursuant to its water lease with Barnesville." *Antero's Reply*, p. 5. Granting Gulfport its requested relief would impair this interest.

Finally, Antero must show that the existing defendant, the Village of Barnesville, will not adequately represent Antero's interests. *Coalition to Defend Affirmative Action*, 501 F.3d at 779; *Grutter*, 188 F.3d at 400. Antero is "'not required to show that the representation will in fact be inadequate.'" *See Grutter*, 188 F.3d at 400 (quoting *Miller*, 103 F.3d at 1247). "Indeed, '[i]t may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments.'" *Id*. (quoting *Miller*, 103 F.3d at 1247) (alteration in original). Antero argues that "Defendant's interest in enforcing the Antero-Barnesville

11

water lease (e.g., avoiding contract liability or securing agreed-upon rates and terms) is not the same as Antero's interest in protecting its own rights (obtaining water essential for its continued business operations)." *Motion to Intervene*, *PAGEID* 50. This Court agrees. Although the Village of Barnesville has taken the same position as Antero with regard to Antero's *Motion to Intervene*, there is no indication that the Village of Barnesville is actually seeking the same outcome as Antero or that it will pursue all of Antero's claims and arguments. Under these circumstances, the Court finds that Antero will not be adequately represented by the existing parties to this lawsuit.

Gulfport also argues that Antero's *Motion to Intervene* should be denied because Antero failed to attach to its motion a pleading that sets out the claim or defense for which intervention is sought. *Gulfport's Response*, pp. 13-14. Rule 24(c) requires that a motion to intervene "state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Antero's *Motion to Intervene* is not accompanied by such a pleading. Nevertheless, the requirement to attach a pleading at the time the motion is filed may be excused where, as here, the parties are clearly on notice of the proposed intervenor's position and there is no indication that the parties will be prejudiced by the failure to attach a pleading. *See Providence Baptist Church*, 425 F.3d at 314. Antero clearly articulated its position in the *Motion to Intervene*, has been actively involved in

12

this action and in settlement negotiations, *see* ECF 11, and moved to intervene before defendant filed a responsive pleading and before the Court's scheduled preliminary pretrial conference.  Under these circumstances, it would be improper to deny Antero intervention on the basis that it failed to attach a proposed pleading to its motion.

Wherefore, based on the foregoing, the Court concludes that Antero Resources Corporation must be permitted to intervene pursuant to Fed. R. Civ. P. 24(a).  Antero's *Non-Party Motion to Intervene*, ECF 9, is **GRANTED**.  Antero must file a responsive pleading by July 9, 2015.[1]

July 2, 2015                                   __s/Norah McCann King_____
                                                    Norah M^cCann King
                                               United States Magistrate Judge

---

[1] The Court notes that Antero and Gulfport are both Delaware corporations and that Antero's intervention may affect this Court's exercise of diversity jurisdiction. In granting the motion for leave to intervene, the Court expresses no present opinion on this issue. However, the Court will expect the parties to address this issue.